UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JOGA SINGH JOHAL,<br><br>　　　　　　Defendant. | No. CR-02-214-FVS<br><br>ORDER DENYING MOTION TO VACATE |

**THIS MATTER** comes before the Court without oral argument based upon request for an evidentiary hearing and motion to vacate the judgment.  He is represented by Mark E. Vovos; the government by Joseph H. Harrington.

**PROCEDURAL HISTORY**

Joga Johal and Balraj Singh were charged in separate indictments with possessing and/or distributing pseudoephedrine knowing, or having reasonable cause to believe, that someone was going to use it to manufacture a controlled substance.  21 U.S.C. § 841(c)(2).  Although the crimes allegedly occurred at different places and, with one exception, on different dates, the two men were tried together.  The jury began deliberating on Friday, April 25, 2003.  It sent a series of notes to the Court that day.  One stated in part:

> Can we look at language problems as well as cultural values shown in testimony?  Do we judge from our lives?

(**Ct. Rec. 133.**)  The jury did not reach a verdict on Friday.

ORDER DENYING MOTION TO VACATE - 1

Deliberations resumed on Monday, April 28th.  At some point that day, a single juror sent the following note to the Court:

> On Friday we voted [word scratched out] of the defendants guilty but I refused to sign the paperwork because I wanted more time.
> Currently, we are at an hopeless impass [sic] on [word scratched out] both cases.

(**Ct. Rec. 139.**)  Ultimately, the Court declared a mistrial.  The government dismissed the charges against Mr. Singh, but proceeded with the charges against Mr. Johal.  The second trial began on July 30, 2003.  The case went to the jury on August 6th.  Later that day, the jury informed the Court in writing that it had reached a verdict.  This was the only note which the jury sent to the Court.  The jury found Mr. Johal guilty as charged.  On December 12th, the Court sentenced Mr. Johal to a term of 70 months incarceration.  He filed a notice of appeal and the Court allowed him to remain out of custody while his appeal was pending.  On August 30, 2005, the Ninth Circuit filed a published opinion affirming the judgment.  *United States v. Johal*, 428 F.3d 823 (9th Cir.2005).  Mr. Johal began serving his sentence on June 15, 2006.  On May 15, 2007, he filed a motion to vacate the judgment on the ground that he was denied constitutionally effective assistance of counsel in violation of the Sixth Amendment.  28 U.S.C. § 2255.  *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

**GROUNDS FOR RELIEF**

Mr. Johal owned and operated a convenience store.  At trial, he acknowledged that he knew he was selling substantially more pseudoephedrine than the law permitted him to sell and that it was wrong to do so.  (Transcript of Second Trial (**Ct. Rec. 241**), at 882-

ORDER DENYING MOTION TO VACATE - 2

3.)  Nevertheless, his attorney argued that Mr. Johal neither knew nor reasonably should have known that someone was going to use the pseudoephedrine to manufacture a controlled substance.  In support of this defense, the attorney presented both lay and expert testimony concerning Mr. Johal's limited comprehension of the English language.  Looking back on his trial, Mr. Johal argues that his attorney's performance was deficient.  Not only did he overlook important lay witnesses, but also he allegedly failed to obtain adequate testing and analysis of Mr. Johal's English-comprehension skills.  Mr. Johal alleges that he suffered prejudice as a result.  According to Mr. Johal, his attorney's failure to marshal more testimony, especially more compelling expert testimony, undermined his contention that he lacked the English-comprehension skills necessary to form the *mens rea* of the crime charged.  Mr. Johal urges the Court to hold an evidentiary hearing.  At the hearing, says Mr. Johal, he will document the limitations upon his ability to understand English and demonstrate why he suffered prejudice from his attorney's inadequate performance.

**STANDARD**

In order to prevail, Mr. Johal must prove that his trial attorney's performance was unreasonable under prevailing professional standards, and that there is a reasonable probability the verdict would have been different but for his attorney's unprofessional errors.  *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.2001).  "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.'"  *Id.* (quoting Strickland, 466 U.S. at 694, 104 S.Ct. at 2068).  Mr. Johal is entitled to an evidentiary hearing unless the motion, files, and records of the case "conclusively show" that he is entitled to no relief.  28 U.S.C. §

ORDER DENYING MOTION TO VACATE - 3

2255(b).  *See United States v. Howard*, 381 F.3d 873, 877 (9th Cir.2004) (a district court may deny a request for an evidentiary hearing only if the claim is "'so palpably incredible or patently frivolous as to warrant summary dismissal'" (quoting *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir.2003))).

**RULING**

Mr. Johal's trial attorney offered testimony that Mr. Johal did not understand English very well during March of 2002.  The jury considered this testimony along with the rest of the evidence.  The jury found Mr. Johal guilty.  Implicit in the jury's verdict was a determination that his English was good enough to form the *mens rea* necessary to violate 21 U.S.C. § 841(c)(2); that is to say, he knew or reasonably should have known that the pseudoephedrine which he sold was going to be used to manufacture a controlled substance.  After the Ninth Circuit affirmed the judgment, Mr. Johal began obtaining additional assessments of his English-comprehension skills.  A number of experts are prepared to testify on his behalf.[1]  However, only one of them, Kathleen R. Fahey, Ph.D., has personally interacted with Mr. Johal.  (*See, e.g.,* Declaration of Mark E. Vovos in Support of Request for an Evidentiary Hearing (**Ct. Rec. 306**), at 2-3.)  Unlike Mr. Johal's experts (with the exception of Dr. Fahey), the jurors had an opportunity to listen to him, both on tape and in person.  The

---

[1] The Court assumes, for purposes of argument, that the testimony is admissible under Federal Rule of Evidence 704.  *Cf. United States v. Morales*, 108 F.3d 1031, 1041 (9th Cir.1997) (en banc) ("[a] prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*").

ORDER DENYING MOTION TO VACATE - 4

following is some of the evidence that they considered:

On March 7, 2002, law enforcement officers had Pascale Hostetler don a transmitter and enter Mr. Johal's convenience store. She asked for a comparatively large quantity of pseudoephedrine:

| | |
|---|---|
| Hostetler: | Can I get . . . twenty boxes? |
| Johal: | You can get three. |
| Hostetler: | As many . . . That's it? |
| Johal: | The law, no, the ah, I, I show you letter.[2] |
| Hostetler: | Okay, okay. |
| Johal: | The (unintelligible) three, (unintelligible) no more than just the three. |
| Hostetler: | Really? They're cracking down, that's why. |
| Johal: | (Laughing). They're (unintelligible). |
| Hostetler: | Yes, yeah. |
| Johal: | I don't know why |

---

[2] Mr. Johal was questioned about the letter at trial:
Q. Do you remember listening to the tape of March 7th, 2002 where you referred to a letter?
A. Letter? That was just lighter when we light a cigarette.
. . . .
Q. And is it your testimony that you said lighter?
A. I don't know. I can't recall.
(Transcript of Second Trial (**Ct. Rec. 241**), at 903.)

ORDER DENYING MOTION TO VACATE - 5

>                    (unintelligible) the law is
>                    three.

(Transcript of Recording made on March 7, 2002 (**Ct. Rec. 302-3**), at 8-9.) Despite acknowledging a three-box limit, Mr. Johal did not abide by it. He made a number of sales to Ms. Hostetler and the undercover officer during the course of the evening. All together, he sold them 61 boxes of "Action" brand pseudoephedrine. (Transcript of Second Trial (**Ct. Rec. 236**), at 342, 346.)

Ms. Hostetler and the undercover officer were not Mr. Johal's only customers that night. Another was Daniel Wooton. Acting on his own to obtain ingredients for "cooking" methamphetamine, he went to Mr. Johal's convenience store and purchased a case of matches for $65. (Transcript of Second Trial (**Ct. Rec. 240**), at 725-28.) Afterward, he was stopped by law enforcement officers. He decided to cooperate. (*Id.* at 729-30.) On March 13, 2002, officers placed a transmitter on him and had him enter Mr. Johal's convenience store. (*Id.* at 731-32.) He did not ask for pseudoephedrine by name:

> Wooton: Hey . . . you got pills?
> Johal:  What?
> Wooton: Pills? A case?
> Johal:  Action?
> Wooton: You got a case?
> Johal:  Action.
> Wooton: Huh?
> Johal:  Action.
> Wooton: Ex . . . what?
> Johal:  Action. Action.
> Wooton: Action, er . . . whatever . . .

ORDER DENYING MOTION TO VACATE - 6

| | | |
|---|---|---|
| 1 | Johal: | Um, huh. |
| 2 | Wooton: | How much? |
| 3 | Johal: | Fifteen hundred. |
| 4 | Wooton: | Fifteen? |
| 5 | Johal: | Um, huh. |
| 6 | Wooton: | Alright. |
| 7 | Johal: | (Unintelligible). |
| 8 | Wooton: | Do I just hang out or what?  What? |
| 9 | Johal: | You want . . . ah, box matches? |
| 10 | Wooton: | Huh? |
| 11 | Johal: | You want matches? |
| 12 | Wooton: | No . . . just the pills tonight. |
| 13 | Johal: | You matches today? |
| 14 | Wooton: | Yeah. |
| 15 | Johal: | No problem.  (Unintelligible). |
| 16 | Wooton: | Yeah, I was getting the cases. |
| 17 | Johal: | (Unintelligible).  Matches? |
| 18 | Wooton: | Yeah . . . I don't need any of them tonight. |
| 19 | Johal: | Huh? |
| 20 | Wooton: | I don't need them tonight. |
| 21 | Johal: | You want now? |
| 22 | Wooton: | No, I don't need them. |
| 23 | Johal: | You bought here before. |
| 24 | Wooton: | Yeah. |
| 25 | Johal: | I, I, I, I, I, order for you. |
| 26 | Wooton: | Sixty five bucks. |
| | Johal: | Yeah, and I order for you. |

ORDER DENYING MOTION TO VACATE - 7

| | | |
|---|---|---|
| Wooton: | Oh, you did? | |
| Johal: | Yeah. | |
| Wooton: | Alright . . . good . . . well that is a last resort there . . . but . . . | |
| | (Shuffling) | |
| Johal: | I give you a discount for you. | |

(Transcript of Recording made on March 13, 2002 (**Ct. Rec. 302-4**), at 4-6.)  Mr. Wooton paid $1500 to Mr. Johal.  (Transcript of Second Trial (**Ct. Rec. 240**), at 732-§33.)  After a while, Mr. Johal summoned Mr. Wooton to a storeroom.  An associate of Mr. Johal's gave Mr. Wooton a case of Action-brand pseudoephedrine.  (*Id.* at 733.)  It was concealed in a box.  As Mr. Wooton walked toward the exit, Mr. Johal and/or his associate placed ice on top of the box.  (*Id.* at 733-34.)

Evidence concerning the controlled buys enabled the jury to observe how Mr. Johal responded to customers who asked to purchase large quantities of pseudoephedrine.  The jury also had an opportunity to observe him testify during his second trial.  His attorney asked questions in English, which were interpreted to him in Punjabi.  On at least ten occasions, he answered in English.  The following questions and answers are representative:

Q. And did your wife work there as well?
A. Yes. (In English) Stocking. (Through the interpreter) She was stacking (sic).
Q. And 1998, did you stop working there?  And if so, where did you work next?
A. Because I got my half share from Grocery Boys when it came out of business. (In English) then I buy store 2501 West Boone. (Through the interpreter)

ORDER DENYING MOTION TO VACATE - 8

          Then I bought a store at 2501 Boone Street. That was on Boone Street. I work small store over there.

  . . . .

  Q.  Did you buy that yourself? Or did you have a partner in that store?

  A.  (In English) I have it by myself. I have my friend, and he help me. (Through the interpreter) Because there was a friend. He helped me, but I owned fully.

(Transcript of Second Trial (**Ct. Rec. 240**), at 859.)

Mr. Johal's attorney did not complete his direct examination that afternoon. Mr. Johal returned to the witness stand the next morning. He did not answer any questions in English.

During cross-examination, an Assistant United States Attorney ("AUSA") asked a number of questions concerning Mr. Johal's English-comprehension skills, including the following:

  Q.  In fact, it's a fact that you understand the English language and you understand it better than you speak it; isn't that right?

  A.  No. Because sometimes there's an item in front of me, I can understand what is that. Or someone speaks slowly, I can understand.

(Transcript of Second Trial (**Ct. Rec. 241**), at 889.)

  Q.  So its fair to say that you have learned English; isn't that right?

  A.  Just little bit.

  . . . .

ORDER DENYING MOTION TO VACATE - 9

```
     A.   I understand if you speak slow.  [Balance of
          answer omitted.]
```
(*Id.* at 894.)

During redirect, Mr. Johal's attorney sought to establish that the AUSA had used words that Mr. Johal did not understand:

```
     Q.   . . .  There's some words that you were asked.
          One word is "proficiency.[3]"
     A.   What?
     Q.   Do you know that the word "proficiency" was?
     A.   No.
     Q.   So when the Government was asking you about your
          reading proficiency, do you know what that means?
     A.   No.
     . . . .
     Q.   Why did you answer the questions if you did not
          understand the words?
     A.   Which questions?
     Q.   When you were asked about reading proficiency.
     A.   Because I just thought that they are asking me if
          I can read a little bit.
```
(*Id.* at 922-23.)  The preceding testimony illustrates Mr. Johal's ability to communicate effectively in English.  Although he did not know the formal definition of the word "proficiency," he clearly understood that he was being questioned about his ability to read.

---

[3]"And tell the members of the jury whether you passed that reading proficiency exam?"  (Transcript of Second Trial (**Ct. Rec. 241**), at 916.)

ORDER DENYING MOTION TO VACATE - 10

Mr. Johal does not deny that, at all times relevant to this action, he understood some English.  The issue is whether the jury was presented with enough evidence to fairly evaluate his English-comprehension skills.  Contrary to Mr. Johal, there is no reason to think that additional testimony, whether lay or expert, would have altered the outcome.  He knew that he was not supposed to sell more than three boxes of pseudoephedrine at a time.  Nevertheless, on March 7th and March 13th of 2002, he sold scores of boxes at sharply inflated prices, all the while attempting to conceal the sales.  Ms. Hostetler used the words "crystal" and "cooks" to signal the reason she wanted to purchase the pseudoephedrine.  At trial, Mr. Johal denied knowing the "street" meanings of words such as these.  However, when Mr. Wooton asked for a case of "pills," Mr. Johal clearly understood he meant Action brand pseudoephedrine.  Not only did Mr. Johal agree to sell him a case for $1500, but also he volunteered to sell Mr. Wooton a case of matches at a discount.  The offer is interesting.  Mr. Johal knew that his customers normally took pseudoephedrine for "the sniffles." (*Id.* at 905.)  Rarely does a person seeking relief from cold symptoms also seek a case of matches.  The fact that Mr. Johal associated a case-size sale of matches with a case-size sale of pseudoephedrine clearly implies that he knew the pseudoephedrine was going to be used to manufacture a controlled substance.

In sum, the record shows conclusively that Mr. Johal suffered no prejudice from his trial attorney's alleged errors.  Consequently, Mr. Johal was not deprived of his Sixth Amendment right to constitutionally effective assistance of counsel.  Both his request for an evidentiary hearing and his motion to vacate the judgment are

ORDER DENYING MOTION TO VACATE - 11

denied.

**IT IS HEREBY ORDERED:**

1. The defendant's motion for oral argument (**Ct. Rec. 307**) is denied.

2. The defendant's motion for an ex parte in camera hearing (**Ct. Rec. 303**) is denied.

3. The defendant's motion to vacate (**Ct. Rec. 294**) is denied.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this 26th day of March, 2008.

> s/ Fred Van Sickle
> Fred Van Sickle
> United States District Judge

ORDER DENYING MOTION TO VACATE - 12